## EYERMANN v. PIRON, Appellant.

### Division Two, June 26, 1899.

1. **Evidence: ONE PARTY DECEASED: OTHER NOT INCOMPETENT.** The statute which makes one party to a contract incompetent as a witness where the other party is dead, does not exclude the living party where the evidence relates to transactions had with others to which the deceased party was no party, with which he had no connection and of which he had no knowledge.

2. ———: ———: ———: INSTANCES. So that plaintiff, who alleged himself to be the owner of a note, executed by the deceased mother of defendant, was not incompetent to prove an indorsement made by himself on the note as administrator of his father's estate, who had acquired the note from the original payee, nor was he incompetent to show that he had received the note as a distributee of his father's estate. But the defendant was incompetent to testify concerning matters occurring prior to the death of the assignee of the note, although the original payee was still living, since she stood as privy in estate to the deceased maker of the note, and her right of defense was derived from such deceased maker, who would be incompetent if living because of the death of the assignee of the note and mortgage, through whom plaintiff claimed as distributee.

3. **Limitations: BARRED NOTE: SUBSISTING MORTGAGE.** Notwithstanding a note secured by a mortgage is barred by the statute of limitations, the mortgage may be enforced in a suit brought within two years after the passage of the act of 1891, unless the possession of the mortgagor or his grantee has been adverse to the mortgagee long enough to ripen into a title by adverse possession.

4. ———: ———: ———: ADVERSE POSSESSION. Mere possession by the mortgagor does not amount to adverse possession. The relation of mortgagor and mortgagee is created by voluntary contract, and in its inception is friendly, and the possession permissive, and the presumption is that it continues so until the mortgagor by his acts or declarations repudiates the mortgage, and of these the mortgagee must be apprised, or have such notice as would put a reasonably prudent man on inquiry as to whether such holding was hostile to his rights.

5. ———: ———: ———: ———: GRANTEE OF MORTGAGOR. And the same rule applies to the grantee of the mortgagor who has constructive notice of the mortgage.

6. ———: ———: ———: ———: RECOGNITION OF MORTGAGE BY MORTGAGEE. A request by the mortgagor of the mortgagee to pay the taxes to protect his lien, or the sending of an insurance agent to him with a request that he pay the insurance premium, is a recognition by the mortgagor of the mortgage.

7. **Negotiable Note:** LACK OF CONSIDERATION: INDORSEMENT. The admissions of the original payee of a negotiable note, made long after its indorsement by him before maturity, that the note was originally without consideration, can not affect the title acquired by a *bona fide* holder for value.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

AFFIRMED.

J. R. MYERS for appellant.

(1)     The court erred in admitting the evidence of plaintiff. "In actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify in his own favor or in favor of any party to the action claiming under him." Sec. 8918, R. S. 1889; O'Bryan v. Allen, 108 Mo. 227. (2)     The court erred in refusing to allow the defendant to testify who was no party to the contract on which plaintiff sued. (3)     The court erred in refusing defendant's witness, J. R. Myers, to testify to statements made to him by August Eyermann, payee in said note and deed of trust, to the effect that he never had any dealings with Mrs. Schaefer and she never owed him anything and he did not know her. (4)     Plaintiff did not show any title to the note or deed of trust, and therefore, the decree of the court was without authority in law or equity. Donovan v. Thompson, 9 Mo. App.

595; Reinhard v. Dorsey Coal Co., 25 Mo. App. 350; Mechanics Bank v. Donnell, 35 Mo. 373; Morrell v. Roberts, 58 Mo. App. 197; Wallace Cavett v. Thorp, 30 Mo. App. 131. (5) The statute of limitations conferred upon defendant a good title to the property in question after ten years of open, adverse and notorious possession under a claim of title. Bush v. White, 85 Mo. 359; Lewis v. Schwenn, 93 Mo. 32; Booker v. Armstrong, 93 Mo. 50; Rarthel .v. Dozette, 43 Mo. 144; St. Louis v. West, 103 Mo. 655.

RASSIEUR & RASSIEUR for respondent.

(1) The production of the note and mortgage by plaintiff, and proof of the signature and indorsements, established *prima facie* that he is the *bona fide* holder and owner thereof. Priest v. Way, 87 Mo. 16; Mechanic's Bank v. Wright, 53 Mo 153; Shirts v. Overjohn, 60 Mo. 305; Balmer v. Sunder, 11 Mo. App. 454; Rubelman v. McNichol, 13 Mo. App. 584; Lachance v. Loeblein, 15 Mo. App. 460; Grelle v. Loxen, 7 Mo. App. 97. (2) A mortgage may be enforced against the land even though an action upon the note would be barred by limitation. The possession of the mortgagor must have been adverse to the mortgagee, to bar the mortgage. Lewis v. Schwenn, 93 Mo. 26; Booker v. Armstrong, 93 Mo. 49; Gardner v. Terry, 99 Mo. 523; Tucker v. Wells, 111 Mo. 399; Wood v. Augustine, 61 Mo. 46; Cape Girardeau Co. v. Harbison, 58 Mo. 90. The mortgagor's possession is presumed to be friendly, and will be so regarded, unless the mortgagor repudiates the mortgage and holds possession adverse and hostile to the mortgagee. Combs v. Goldsworthy, 109 Mo. 160; Chouteau v. Riddle, 110 Mo. 371; Atchison v. Pease, 96 Mo. 566; St. Louis v. Priest, 103 Mo. 652; Snyder v. Railroad, 112 Mo. 540; Benton Co. v. Czarlinsky, 101 Mo. 280; Orr v. Rode, 101 Mo. 387; Lewis v. Schwenn, 93 Mo. 26. And the possession of a grantee of the equity of redemption is regarded the same as the possession of the mort-

gagor. Combs v. Goldsworthy, *supra;* Chouteau v. Riddle, *supra*. (3) Plaintiff's testimony, concerning matters occurring since the death of the mortgagor, was competent. Wade v. Hardy, 75 Mo. 394; McGlothlin v. Henry, 59 Mo. 213; Martin v. Jones, 59 Mo. 187; Poe v. Dominic, 54 Mo. 119; Banking House v. Rood, 132 Mo. 256; Bank v. Payne, 111 Mo. 292. (4) The admissions of an indorser, made long after the transfer of the note, can not affect the title acquired by a *bona fide* holder for value. Blancjour v. Tutt, 32 Mo. 576; Cleaveland v. Davis, 3 Mo. 331; White v. Ingram, 110 Mo. 474; Albert v. Besel, 88 Mo. 150; Weinrich v. Porter, 47 Mo. 293; Stewart v. Thomas, 35 Mo. 202. (5) The defendant, the grantee of the equity of redemption, was not competent to testify to matters occurring prior to the death of Gottlieb Eyermann, Sr., the assignee of the mortgage. Sec. 8918, R. S. 1889; O'Bryan v. Allen, 108 Mo. 227. A judgment will not be reversed because of the exclusion of testimony, unless the materiality of the testimony appears from the record, so that the appellate court can determine whether the error was prejudicial or harmless. Roussin v. Ins. Co., 15 Mo. 244; Wilkerson v. Allen, 67 Mo. 502; Aull Sav. Bank v. Aull, 80 Mo. 199. Nor will a case be reversed because of the exclusion of testimony, where the testimony excluded is merely cumulative. Morgan v. Wood, 38 Mo. App. 255; Burnstein v. Railroad, 56 Mo. App. 45.

GANTT, P. J.—This is a suit to foreclose the defendant's equity of redemption in certain St. Louis real estate, and was commenced February 18th, 1893.

Mrs. Magaretha Schaefer, the mother of the defendant, Mrs. Piron, acquired the property by deed in 1878.

On August 4th, 1879, Mrs. Schaefer executed her negotiable promissory note of that date for $800, payable to August Eyermann three years after date, with interest from

maturity, and at the same time executed her deed of trust of that date, conveying said property to said Eyermann's trustee, to secure the payment of said note. Said deed of trust also recited: "In trust, however, for the following purposes, to wit: Whereas the party of the first part being indebted to the party of the third part, has executed and delivered to said party of the third part her promissory note, of even date herewith, for the sum of $800.00, payable three years after date, with interest after maturity at the rate of 6 per cent per annum; now, therefore, if said party of the first part shall well and truly pay said note, together with interest to accrue thereon, when the same ought to be paid, then this deed to be null and void, otherwise to remain in full force and effect. It is, however, distinctly agreed and covenanted by and between the party of the first part and the party of the second part that at the expiration of said three years, the said party of the third part, or his assigns or legal representatives, will, at the request of the party of the first part, renew said principal note from year to year for the space of five years thereafter, by adding the yearly interest thereto. This renewal, however, to be made only at the request of the said party of the first part, and the covenant therefor not to extend to her heirs, assigns or legal representatives."

The deed of trust was properly acknowledged before J. J. Laughlin, a notary public, and was duly recorded. The note bears the indorsement of said August Eyermann; also of Gottlieb Eyermann, Jr., as administrator of Gottlieb Eyermann, Sr., deceased; and the note and deed of trust were filed by the plaintiff with his petition.

On August 9, 1883, Mrs. Schaefer conveyed the property to the defendant, her daughter, by deed of that date, duly recorded, subject to the deed of trust aforesaid, and the book and page of the record of the deed of trust are expressly referred to in the deed to the defendant.

The defendant, in her third amended answer, denied generally the allegations of the petition, and pleaded affirmatively that the note and present action were barred by the statute of limitations; that the defendant is and was in adverse possession of the property for more than ten years before the institution of the suit, and that the note and deed of trust were given without consideration.

At the time of the institution of the suit, both Gottlieb Eyermann, Sr., and Margaretha Schaefer were dead.

The note and deed of trust and other deeds above referred to were read in evidence.

Peter J. Doerr, cashier of the Lafayette Bank, who was familiar with the signatures of the indorsers, testified that the indorsements of August Eyermann and of Gottlieb Eyermann, Jr., administrator, were genuine. Arnold P. Roetter, also identified August Eyermann's indorsement.

August Eyermann, the original payee was offered as witness, but owing to the death of Mrs. Schaefer, his testimony was excluded, upon an objection of the defendant.

Gottlieb Eyermann, Jr., the plaintiff, testified that he had indorsed the note as administrator, and that he received this note upon the distribution of the assets of his father's estate. Defendant objected to this testimony on the ground that the witness was incompetent, which objection was overruled by the court, and defendant excepted.

John Eyermann, George Eyermann, Pauline Redwick and Margaretha Goebel, the only other distributees of the estate of Gottlieb Eyermann, Sr., deceased, also offered to testify that they made no claim to the note, but their testimony was excluded.

John Markwitz, an insurance agent, testified that in March, 1895, the defendant, in conversation with him, while he was soliciting her insurance, acknowledged that plaintiff claimed the property.

A. O. Engelmann testified that in 1890, when he demanded payment of a special tax bill, Mrs. Schaefer and the defendant, Mrs. Piron, requested him to see Mr. Eyermann and collect from him, "because he holds a deed of trust upon the property."

The defendant introduced a number of witnesses, her daughter, Lena Piron, Mrs. Christman, Mrs. Krenzer, Mrs. Grasick, and Mrs. Gazell, who testified that Mrs. Schaefer said that Mrs. Piron was the owner of the premises; that Mrs. Piron lived there for 13 years, and that she made the necessary repairs from time to time.

Lena Piron also stated that Gottlieb Eyermann, Sr., called at the house only once, in 1883, when Mrs. Schaefer executed the deed to the defendant. Eyermann always paid the taxes.

Mrs. Gazell testified that she was housekeeper for Gottlieb Eyermann, Sr., from 1877 to 1887, and Mrs. Piron was also in his employ. During that time Eyermann paid the taxes against the property in controversy. This witness, and Valle and J. S. Robbins and G. F. Keller, experts on handwriting, testified that in their opinion the indorsement of August Eyermann had been written by Gottlieb Eyermann, Sr. None of them, however, had ever seen any signature or handwriting of August Eyermann.

The defendant, Mrs. Piron, testified that she lived in the premises since December, 1879. She was then asked: "Q. I will ask you under what circumstances you came to move there where you now live." This was excluded, on the ground that the witness was incompetent. No other questions were asked of this witness, and no statement made as to what she was expected to prove.

Lena Piron had testified to the circumstances under which her mother moved there.

John R. Meyers, attorney for defendant, undertook to state conversations which he had with August Eyermann,

the payee, in 1889 or 1890. This evidence was likewise excluded.

T. F. W. Zimmermann, a justice of the peace, testified that in August, 1883, he took Mrs. Schaefer's acknowledgment to the deed conveying the property to Mrs. Piron, subject to the deed of trust. Mrs. Schaefer understood it fully. He went to the house at the request of Gottlieb Eyermann, Sr., and was accompanied by him. This witness did not testify, as stated by counsel for appellant, that he took the acknowledgment to the deed of trust. Nor did he testify that Gottlieb Eyermann, Sr., took possession of the deed of trust immediately upon its execution. He referred to the deed to Mrs. Piron.

The trial court found the issues in favor of plaintiff, and entered a decree of foreclosure, and ordered a sale of the property to satisfy the special judgment against the defendant. After her motions for a new trial and in arrest were overruled, the defendant perfected her appeal to this court.

I. The first error of which the defendant complains is the action of the circuit court in permitting the plaintiff to testify. Her contention is that inasmuch as Mrs. Schaefer the original mortgagor was dead at the time of the trial, plaintiff who alleged himself to be the owner of the note and mortgage executed by her, was incompetent under section 8918, R. S. 1889.

Plaintiff only offered this witness to prove an indorsement made by himself on the note as administrator of his father's estate, and that he received this note as one of the distributees of his father, Gottlieb Eyermann, Sr., but defendant's objection was that he was incompetent to testify at all, or for any purpose.

It is not true that a party to a contract can not testify at all when the other original party to the contract is dead.

It has long been ruled by this court that it was not the intention of the statute to exclude the living party when the

other was dead, where the evidence related to transactions had with others and to which the deceased party was no party and with which he had no connection, and of which he had no knowledge. [Martin v. Jones, 59 Mo. loc. cit. 187; Stanton v. Ryan, 41 Mo. 510.]

Now the facts to which plaintiff was called to testify confessedly happened after the death of Mrs. Schaefer and as a matter of course she could have known nothing of them. Moreover it was simply the proof by the plaintiff of his own act of indorsement on the note and of the receipt of the same by him as a distributee of his father's estate. Neither of these facts could have affected the defendant unless the other facts showed an ownership of the note and mortgage by plaintiff's father, Gottlieb Eyermann, Sr. We think the evidence was admissible. [Wade v. Hardy, 75 Mo. 394; Banking House v. Rood, 132 Mo. 256].

II. Did the plaintiff show title to the note?

The note itself imported a valuable consideration, and it was neither necessary to aver a consideration or to prove it. [Section 2389, R. S. 1889; Skinner v. Skinner's Exr., 77 Mo. 148; Taylor v. Newman, 77 Mo. 257; County of Montgomery v. Auchley, 92 Mo. 126.]

The deed of trust solemnly executed by Mrs. Schaefer recites that it was given because Mrs. Schaefer was indebted to August Eyermann, and was acknowledged by her before the notary public. The consideration for and the execution of the note being thus fully established, the transfer was proved by the evidence of Doerr, the cashier of the Lafayette Bank, in which bank August Eyermann had left his genuine signature and his checks and drafts had been handled for at least twenty years, and also by Mr. Roeller.

While there was evidence on the part of defendant to the effect that the indorsement of the name of August Eyermann was in the handwriting of his brother, Gottlieb Eyermann, this merely raised an issue of fact which the circuit

court resolved in favor of plaintiff, and there is certainly nothing in its findings which smacks in the slightest of an abuse of its power as a trier of the facts.

It follows then that at the time of his death Gottlieb Eyermann, Sr., was in possession of the note and mortgage duly indorsed and *prima facie* at least he was owner thereof and they had been indorsed to him before maturity, for value and in good faith.   [1 Daniels' Neg. Instruments, sec. 728 and cases cited; New Albany Mills v. Meyers, 43 Mo. App. 124.]   But this is not all.   The witness, Mr. Englemann, testified that in 1890 he had a special tax bill for collection against the real estate, and Mrs. Schaefer and Mrs. Piron requested him to call upon Gottlieb Eyermann, Sr., and collect the tax from him, as he held a deed of trust upon the property.

There was ample evidence to support the finding of the chancellor that Gottlieb Eyermann was the owner of the note and mortgage at his death.

It stands admitted that the plaintiff Gottlieb Eyermann, Jr., was the duly appointed and acting administrator of the estate of his father, Gottlieb, Sr.   The statute governing the distribution of estates, section 209, R. S. 1889, expressly authorizes "executors and administrators to assign the notes and bonds of the estate to creditors, legatees and distributees in discharge of an amount of their claims equal to the amount of such bond or note," and thus it was that plaintiff acquired that note and mortgage sued on.

Having seen that Gottlieb Eyermann, Sr. died the owner and in possession of these choses and that his title passed to plaintiff, we come to the real contention made in this case, and that was that the note and mortgage were barred by the statute of limitations of ten years.   Conceding that the note is barred by the lapse of time prescribed in the statute it must now be held that it was settled in this State prior to the act of February 18, 1891 (Laws of Mo. 1891,

p. 184), that notwithstanding a note secured by mortgage is barred, the mortgage may be enforced unless the possession by the mortgagor or his grantee has been adverse to the mortgagee long enough to ripen into a title by adverse possession. As this suit was brought before the expiration of two years after the passage of said act it does not control in the determination thereof.

It is this question in this case which confers jurisdiction of this appeal on this court.

Nothing can or need be added to the full and satisfactory disposition made of this question by this court in Combs v. Goldsworthy, 109 Mo. 151, and Chouteau v. Riddle, 110 Mo. 366, and the cases cited and discussed. It was determined in these cases that in order to bar the foreclosure of a mortgage there must have been an adverse possession of the mortgaged property for the requisite period to create the bar; that mere possession by the mortgagor for ten years would not suffice, but that possession must have been adverse; that the relation of mortgagor and mortgagee is created by voluntary contract and in its inception is friendly, and the possession permissive, and the presumption will be indulged that it continues so until the mortgagor has by his acts or declarations repudiated the mortgage, of which the mortgagee must be apprised or have such notice as would put a reasonably prudent man on inquiry as to whether such holding was hostile to his right. [St. Louis v. Priest, 103 Mo. 652; Benton County v. Czarlinsky, 101 Mo. 275; Booker v. Armstrong, 93 Mo. 49.] Nor is a grantee of a mortgagor with constructive notice of the mortgage in any better situation than his grantor. He can only avail himself of the presumption of payment from lapse of time when the mortgagor could do so, under the same circumstances. [Lewis v. Schwenn, 93 Mo. 26.]

In this case Mrs. Piron took her deed from her mother reciting the existence of this deed of trust; there is absolutely

no evidence that Mrs. Schaefer or Mrs. Piron ever repudiated this mortgage, but the contrary does appear. All that either of them ever did about the property is consistent with the mortgagee's rights. The statement attributed to Gottlieb Eyermann, Sr., by Mrs. Gazell in 1879, that Mrs. Schaefer's lot was free, does not reach the case. This mortgage was not executed till 1883. In 1890 they fully recognized Eyermann's mortgage by asking him to pay the special tax to protect his lien, and this is also true of their conduct in sending Markwitz in 1895 to collect the insurance premium from Eyermann. It would be unprecedented to hold that the circuit court erred because under such proofs he held there was no adverse possession.

As to the exclusion of Mr. Meyers, counsel for defendant, it is plain the court committed no error. He only offered to testify to statements made to him by August Eyermann, who had not been a witness, and whose declarations if made, were uttered long after he had indorsed the note to Gottlieb Eyermann under whom plaintiff claimed.

Equally without merit is the error based upon the exclusion of Mrs. Piron's evidence as to the circumstances under which she came to live with her mother. There was no offer to connect Gottlieb Eyermann, Sr., or plaintiff with the understanding or agreement with her mother and in the absence of such offer nothing they did or said would affect the mortgagee's rights.

The testimony of Mrs. Piron was properly excluded as to any matters occurring prior to the death of Gottlieb Eyermann, Sr. He was the assignee of the mortgagee, and she stood as a privy in estate with her mother, who had executed the mortgage. Her right of defense is derived from her mother who would be incompetent if living, because of Gottlieb's death. [O'Bryan v. Allen, 108 Mo. 227].

Finally upon the whole case we think the decree was for the right party.

Cranor v. School Dist.

It is evident that Gottlieb Eyermann, Sr., acted with great consideration for defendants. He paid the taxes, special and general, and forebore to enforce his mortgage for a long time.

Indeed the deed of trust shows that he expected to be lenient with Mrs. Schaefer who seems to have been a domestic servant for him for several years.

Finding no reversible errors, the decree! is affirmed. SHERWOOD and BURGESS, JJ., concur.